ERICKSON, Chief District Judge,
dissenting:
I respectfully dissent. The Miller Act provides,
[a] person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made.
40 U.S.C. § 3133(b)(2). This case involves a series of contracts under an open account. From January 2008 through July 2008, Otay paid only eleven of its eighty-nine invoices. Of the $706,917.62 Otay paid Ramona during the relevant time period, Otay allocated only $17,538.32 to this federal construction project. The remainder was allocated to a separate project. Ramona did not notify Candelaria until July 25, 2008 of the nonpayment. In the interim, Ramona assessed 1.5% monthly compounding interest on each outstanding balance.
A significant purpose of the 90-day notice provision in the Miller Act is to protect the general contractor and its surety. The potential extended duration of an open account relationship risks surprising the general contractor with an unforeseen and possibly staggering obligation. Requiring a subcontractor to provide notice at 90-day *1071 intervals is not overly burdensome, comports with the purpose of the Miller Act, and lessens the risk that a subcontractor might delay notice of outstanding debt for a greater profit.
I join the other courts that have adopted the more stringent notice requirement advocated by Appellants. See, e.g., United States ex rel. Country Boys Feed and Farm Supply v. Eickelmann, No. 08-3429-CV-S-GAF, 2010 WL 750059, at *5 (W.D.Mo. March 2, 2010) (“Generally, an open account should not be considered a contract for purposes of the notice provision. Rather, the separate orders of materials under the open account, which are typically represented in purchase orders or invoices, satisfy the underlying contract requirement.” (internal citation omitted)); United States ex rel. Robert DeFilippis Crane Serv. Inc. v. William L. Crow Constr. Co., 826 F.Supp. 647, 655 (E.D.N.Y.1993) (“Where claims are based on a series of contracts, a claim must be made within 90 days from the date on which the supplier ‘furnished or supplied the last of the material’ for each underlying contract.”); see also United States ex rel. J.A. Edwards & Co. v. Peter Reiss Const. Co., 273 F.2d 880, 881-82 (2d Cir.1959) (“[I]t would be wholly inconsistent with the purpose of the notice provision of the Miller Act ... to hold that a shipment made on March 5, 1957, under»an order of February 20, 1957, could revive a Miller Act liability long extinguished”).
I believe Ramona’s July 25, 2008 notice of claim bars recovery for the forty-seven invoices issued prior to April 26, 2008. Accordingly, I would reverse and remand for entry of judgment, reducing the damages by $113,508.46 for failure to provide the proper notice of claim.
Appellants also contend that Otay’s prolonged delinquency on project-related payments should have put Ramona on notice of its need to mitigate damages. I agree. By the time Otay’s subcontract was terminated on June 6, 2008, seventy-eight invoices remained unpaid.
The general rule regarding a party’s duty to mitigate damages provides:
[Wjhere a party is entitled to the benefit of a contract and can save himself from a loss arising from a breach of it at a trifling expense or with reasonable exertions, it is his duty to do it; and he can charge the delinquent with such damages only as, with reasonable endeavors and expense, he could not prevent.
Commodity Credit Corp. v. Rosenberg Bros. & Co., 243 F.2d 504, 511 (9th Cir.1957). Ramona allowed seventy-eight invoices to go unpaid, accruing a debt of $218,329.23 and an additional $175,658.57 in self-generated late fees.
The district court failed to consider, as a reasonable mitigating measure, Ramona’s failure to timely notify. Candelaria of Otay’s growing debt. Ramona concedes the very act of filing a Miller Act claim can constitute “available and judicially honorable means of mitigating” losses. United States ex rel. Balboa Ins. Co. v. Algernon Blair, Inc., 795 F.2d 404, 409 (5th Cir.1986). For a Miller Act obligee to have the opportunity to mitigate damages, however, an aggrieved party must actually submit the claim. Regardless of the statutory notice requirements, sending Appellants notice at any time in the months between Otay’s original default and its ultimate termination would surely constitute reasonable exertion “at a trifling expense.” See Commodity Credit Corp., 243 F.2d at 511. Moreover, this measure could have prevented hundreds of thousands of dollars in “service charges” and litigation expenses.
The district court’s determination that the duty to mitigate damages did not arise until June 10, 2008 was clearly erroneous. Providing notice to Appellants of Otay’s *1072 default was a reasonable form of mitigation available to Ramona prior to termination of the subcontract. I would reverse and remand for further proceedings on this issue.
Appellants also assert Ramona waived its right to service charges through its course of conduct. Each rental agreement provides that a customer “agrees to pay a monthly service charge on all unpaid balances of 1-1/2% per month.” Despite Otay’s growing delinquency, Ramona did not assess service charges on any invoices issued during Otay’s subcontract (with the exception of one service charge which Ramona credited back to Otay). Ramona’s first exercise of this contractual light took place on June 30, 2008 — months after Otay’s first default and weeks after its termination by Candelaria- — when Ramona issued thirty-five “finance charge” invoices at once.
Ramona waived its right to collect service charges through its course of conduct. I would, therefore, vacate the award of $106,516.64 for service charges.